**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**FORT LAUDERDALE DIVISION**

**CASE NO.: 0:22cv60779**

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

FUNERAL & CREMATION GROUP OF
NORTH AMERICA, LLC, a Delaware
limited liability company,

LEGACY CREMATION SERVICES, LLC,
also d/b/a LEGACY FUNERAL
SERVICES, HERITAGE CREMATION
PROVIDER, EVERGREEN FUNERAL
HOME AND CREMATORY, and
CAROLINA CENTRAL CREMATORY, a
Colorado limited liability company, and

ANTHONY JOSEPH DAMIANO, a/k/a AJ
DAMIANO, AJ STYLES, or AJ
MAHONEY, individually and as an officer
of FUNERAL & CREMATION GROUP OF
NORTH AMERICA, LLC; and
LEGACY CREMATION SERVICES, LLC,

        Defendants.

**COMPLAINT FOR PERMANENT INJUNCTION,**
**CIVIL PENALTIES, MONETARY RELIEF AND OTHER RELIEF**
**(DEMAND FOR JURY TRIAL)**

Plaintiff, the United States of America, by its undersigned attorneys, acting upon

notification and authorization to the Attorney General by the Federal Trade Commission ("FTC"

or the "Commission") pursuant to Section 16(a)(1) of the Federal Trade Commission Act ("FTC

Act"), 15 U.S.C. § 56(a)(1), for its Complaint alleges:

1

1.      Plaintiff brings this action under Sections 5(m)(1)(A), 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(m)(1)(A), 53(b),  56(a), 57b, and the Commission's Trade Regulation Rule Concerning Funeral Industry Practices ("Funeral Rule"), 16 C.F.R. Part 453, to obtain permanent injunctive relief, monetary relief, and other relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Funeral Rule in connection with the marketing and sale of funeral goods and services.

## SUMMARY

2.      Defendants hold themselves out to be local funeral homes providing low cost cremation services to consumers throughout the United States.

3.      In truth, Defendants do not operate local crematories and do not conduct cremations.  Defendants deal directly with consumers, offer services, and set prices.  Then Defendants arrange for third-party cremation providers and funeral homes to perform the cremation services.

4.      In numerous instances, Defendants represent lower prices for their cremation services than the final price Defendants ultimately require consumers to pay, which includes additional undisclosed charges.

5.      In numerous instances, the services Defendants arrange are not located close to bereaved consumers as advertised, and thus Defendants force those consumers to travel long distances for viewings and to obtain the remains of loved ones.

6.      In some instances when consumers contest Defendants' charges, Defendants threaten not to return or actually refuse to return their loved one's remains until the consumers pay.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),

and 1345.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (b)(3), (c)(1),

(c)(2), and (d), and 15 U.S.C. § 53(b).

**DEFENDANTS**

9.      Defendant Funeral & Cremation Group of North America, LLC ("**Funeral &**

**Cremation**") is a Delaware limited liability company with its principal place of business at 2124

Crown Center Drive, Charlotte, NC 28227.  Funeral & Cremation transacts or has transacted

business in this District and throughout the United States.  Funeral & Cremation serves as the

holding company for Legacy Cremation Services, LLC (collectively, "Corporate Defendants").

Defendant Anthony Joseph Damiano ("**Damiano**") is the principal and sole member of Funeral

& Cremation.  At all times relevant to this Complaint, acting alone or in concert with others,

Funeral & Cremation has advertised, marketed, distributed, offered to sell, or sold funeral goods

and services to consumers throughout the United States.

10.     Defendant Legacy Cremation Services, LLC ("**Legacy**"), also doing business as

Legacy Funeral Services, Heritage Cremation Provider, Evergreen Funeral Home and

Crematory, and Carolina Central Crematory, is a Colorado limited liability company with its

principal places of business as 9800 Mount Pyramid Court, Denver, CO 80112, and 2124 Crown

Center Drive, Charlotte, NC 28227.  Legacy transacts or has transacted business in this District

and throughout the United States.  At all times relevant to this Complaint, acting alone or in

concert with others, Legacy has advertised, marketed, distributed, offered to sell, or sold funeral

goods and services to consumers throughout the United States.

11.     Defendant Anthony Joseph Damiano, also known AJ Damiano, AJ Styles, or AJ

Mahoney, is the sole member of Legacy and Funeral & Cremation.  At all times relevant to this

Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the

3

authority to control, or participated in the acts and practices of Corporate Defendants, including the acts and practices set forth in this Complaint.  Damiano is solely responsible for managing Corporate Defendants, supervising and assigning duties to employees, and approving content for Corporate Defendants' websites.  Damiano has, on behalf of Corporate Defendants, responded to complaints from regulators, law enforcement agencies, and consumers.  Damiano regularly communicates with Corporate Defendants' customers and prospective customers about the Corporate Defendants' location, goods and services, and prices.  Damiano resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## COMMON ENTERPRISE

12.     Corporate Defendants have operated as a common enterprise while engaging in the deceptive, unfair, and unlawful acts and practices and other violations of law alleged below. Corporate Defendants have conducted the business practices described below through interrelated companies that have common ownership, that engage in regular transfer of revenue between the common enterprise members, share mailing addresses, and share business functions. Because these Corporate Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

## COMMERCE

13.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## THE FTC ACT

14.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

4

15.     Misrepresentations of material facts constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

16.     Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## THE FUNERAL RULE

17.     The Funeral Rule, promulgated by the Commission under Section 18 of the FTC Act, 15 U.S.C. § 57a, became effective in its entirety on April 30, 1984, and since that date has remained in full force and effect.  Amendments to the Funeral Rule were promulgated by the Commission under Section 18 of the FTC Act, 15 U.S.C. § 57a, and became effective on July 19, 1994.  The Funeral Rule is codified at 16 C.F.R. Part 453.

18.     Defendants are "funeral providers," as that term is defined in Section 453.l(i) of the Funeral Rule, 16 C.F.R. § 453.l(i), and sell or offer to sell "funeral goods" and "funeral services," as those terms are defined in Sections 453.l(h) and 453.l(j) of the Funeral Rule, 16 C.F.R. §§ 453.l(h) and 453.l(j).

19.     The Funeral Rule requires funeral providers to provide accurate price information and other readily available information that reasonably answers the questions of consumers who ask by telephone about the funeral providers' offerings and prices.  16 C.F.R. § 453.2(b)(1).

20.     The Funeral Rule further requires funeral providers to provide consumers with statements of funeral goods and services at the conclusion of the discussion of arrangements that include an itemized written list of the funeral goods and services selected and the prices to be

paid for each of them, including any cash advance items, and the total cost of the goods and services selected by the consumer. 16 C.F.R. § 453.2(b)(5)(i)(A)-(C).

21.    The Funeral Rule requires funeral providers to place the following disclosure in the itemized statement of funeral goods and services selected, in immediate conjunction with the list of itemized cash advance items required by § 453.2(b)(5)(i)(B): "We charge you for our services in obtaining: (specify cash advance items)," if the funeral provider makes a charge upon, or receives and retains a rebate, commission or trade or volume discount upon a cash advance item. 16 C.F.R. § 453.3(f)(2).

22.    Pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Funeral Rule constitutes an unfair or deceptive act or practice in violation of Section 5(a)(l) of the FTC Act, 15 U.S.C. § 45(a)(l).

23.    Section 5(m)(l)(A) of the FTC Act, 15 U.S.C. § 45(m)(l)(A), authorizes this Court to award monetary civil penalties of not more than $43,792 for each violation of the Funeral Rule.

24.    Each instance in which Defendants have failed to comply with the Funeral Rule, 16 C.F.R. Part 453, constitutes a separate violation of the Funeral Rule for the purpose of assessing monetary civil penalties.

## DEFENDANTS' BUSINESS ACTIVITIES

### Defendants' Misrepresentations about Location

25.    Defendants market their services online through two websites: www.legacycremationservices.com ("Legacy Website") and www.heritagecremationprovider.com ("Heritage Website"). Damiano owns both websites and controls their content.

26.     Numerous bereaved consumers seek cremation services in the deceased's

community so that the family and friends of the deceased can attend memorial services or

viewings without traveling long distances.

27.     Defendants have optimized the Legacy Website and Heritage Website such that,

in numerous cases, when consumers query an online search engine for local or affordable

cremation services, Defendants' websites appear at or near the top of search results for such

providers.  By doing so, Defendants represent that they provide local crematory services, even

though Defendants do not own or operate any crematories, and in many cases ultimately do not

arrange for services in the searched location.

28.     Defendants have configured the websites to prominently display the name of the

city or town for which the consumer searched.  For example, if a consumer searches for

cremation services in Abbeville, Alabama and clicks on an optimized link in the search engine

results, they arrive at a landing page titled "Trusted Cremation Services in Abbeville" that offers

"compassionate community service close to home."



Figure 1: Screen capture of Heritage Website landing page for Abbeville, AL.

29.     The Heritage Website does not inform consumers that Legacy, doing business as

Heritage, is not a local crematory or funeral home, and that if consumers engage Legacy's

services, Legacy will attempt to locate a provider in the relevant area to perform the cremation services.

30.    If consumers click on the Legacy Website link for Abbeville, AL Cremation Services, they arrive at a landing page titled "Abbeville, AL Cremation Services."





Figure 2: Screen capture of Legacy Website landing page for Abbeville, AL.

31.    The landing page includes information about the cremation and other funeral services available.  The phone number for Legacy appears at the top of the page.  After scrolling past services available, consumers are shown information about cremation services that has been optimized to repeat the name of the location searched for by the consumer.

## What to Expect from Cremation Services in Abbeville , AL

Cremation services in Abbeville , AL completely understand how you will be devastated by the loss of a loved one and will need help and assistance in arranging a cremation.

One of the main reasons that people regularly choose a cremation over a burial is linked to the cremation costs in Abbeville , AL. The final bill for cremating a person is usually far lower than the cost of arranging a burial because you do not have to pay for the land, its preparation and then the long-term upkeep.

Across all of America cremations are rapidly increasing as the most popular choice of interment and it is predicted that over 50% of people will choose cremation within the next 20 years or so. An exact and full price list will be passed to the person organizing the cremation so that you fully understand all of the cremation costs in Abbeville , AL.

## Why Do People Choose Cremation in Abbeville , AL?

When you have experienced standing around a graveside as the body is lowered into the earth, it is an experience that many prefer to forget. The very different, and less dramatic experience of attending a cremation, focuses more on the person who has died rather than the events organized by Abbeville , AL cremation services.

As families grow, many people are moving long distances away with many people choosing to live abroad. This means that less people are available to tend a grave area. By choosing a cremation, the ashes can be spread and no-one is required to keep fresh flowers in a particular area to maintain a memory.

Some religions will only accept a cremation as the only option for interment and this will be explained by cremation services in Abbeville , AL. In the past, other religions would not accept a cremation as an alternative, but in modern times, the majority of religions are completely accepting of the cremation method being used.

Were you to cast a survey, you would find that modern cemeteries are regarded as extremely sterile and lacking of great character and if you live in a colder area, a grave is a difficult place to visit because of the weather, especially the snow and even more so in a northern state. This explains why many people look at the Abbeville , AL cremation costs and choose it as their best option

For extreme forward thinkers, they don't wish their DNA to be available in the future and once the ashes have been scattered, the opportunity will disappeared forever.

Figure 3: Screen capture of Legacy Website landing page for Abbeville, AL.

32.     The Legacy Website states, at the bottom of the landing page, in small, light purple font on a dark purple background:

> Legacy Funeral Services license number (FH-706) has a national network of locally-licensed funeral and cremation providers for final funeral and cremation services, which includes hand selected independently owned and locally operated licensed funeral and crematory establishments.



Figure 4: Screen capture of Legacy Website landing page for Abbeville, AL.

33.     This unclear and inconspicuous statement is the only information on the Legacy

Website that suggests that Defendants are not themselves a local crematory.  It is not in close

proximity to the prominent representations that Defendants are a local crematory and is

positioned below optimized location information.

34.     To make cremation arrangements, consumers call Defendants using the telephone

numbers on Defendants' websites, or they complete the contact forms on Defendants' websites

and Defendants call them.

35.     When consumers ask Defendants whether they are a local crematory, in many

instances Defendants tell consumers that they are a local crematory or they work with

crematories in the town where consumers are seeking services.

36.     In fact, Defendants do not own or operate any crematories and always engage

with third-party cremation providers with which Defendants do not maintain any contracts.

37.     In numerous instances, consumers try to locate Defendants' local crematory, often

after their loved one's remains have been taken into care by a third-party service provider hired

by Defendants.  Consumers learn that—contrary to the representations Defendants make on their

websites and during telephone calls and in emails with consumers—there is no local crematory

named "Legacy" or "Heritage."  Upon learning that their loved ones' remains are not in the

location Defendants represented, bereaved consumers wishing to have viewings or memorial

services must travel sometimes more than an hour to the third-party cremation providers'

location.

38.     Likewise, consumers who want to pick up their loved ones' cremated remains

must travel sometimes more than an hour to retrieve them or agree to have the cremated remains

mailed.

39.     In numerous instances, when asked by consumers who are looking for the

location of the crematory, Defendants refuse to disclose the name and location of the third-party

cremation provider.

40.     Defendants' customer service scripts direct employees not to provide the name

and location of the third-party cremation provider until after consumers have paid.

41.     Defendants have refused to disclose the location of third-party crematories

holding remains.

**Defendants' Misrepresentations About Price**

42.     Defendants make representations about the price of cremation services that are

false and misleading.

43.     The Legacy Website lists the price for cremations "[f]rom $695" and states that

Defendants' "Cremation Packages Include," among other things, the "death certificate,"

"[t]ransportation of the deceased to the crematory," and an "[a]lternative container."  Consumers

rarely, if ever, receive cremation services from Defendants for $695.  In nearly all instances,

Defendants mark up the cost for cremation, and add numerous additional fees to the price of

11

cremation services.

44.     The Legacy Website does not include any disclosures about additional fees or items not included in the Cremation Package.

45.     The Heritage Website lists the price for cremations as "[o]nly $695 - $1395," and states that cremation services include "[t]ransportation of the deceased to the crematory," "[o]btaining certified copies of death certificate [sic]," "[a]ssistance in filing for VA & Social Security Benefits," and "[r]igid container (for return of the cremated remains)."

46.     Below the price, the Heritage Website includes a confusing statement regarding additional expenses such as cash advance items, state fees for permits, certified copies of death certificates, alternative cremation container, sales tax, and newspaper charges.  However, this unclear disclosure is in direct conflict with the representation immediately preceding it, which lists death certificates as a part of the cremation services included in the package price. Moreover, it is unlikely that consumers are aware that these additional items will add hundreds of dollars to the package price advertised online.

47.     During initial phone calls with consumers seeking cremation services, Defendants rarely, if ever, offer cremation packages at the $695 low end of the price range advertised online. Instead, the prices quoted for cremation packages on the telephone or in emails responding to consumer inquiries are generally at least $300 more, often around $995.

48.     Even the higher prices quoted for cremation packages are often false and later increased, often exceeding $1,395, the top end of the price range listed on the Heritage Website.

49.     In numerous instances, Defendants tell consumers that the price quoted on the telephone includes all goods and services when they know that is often not the case.

50.     In numerous instances, Defendants charge consumers additional fees Defendants

have not previously disclosed for goods and services such as death certificates, death certificate

filing fees, county permits, heavy duty vinyl pouches, or alternative containers, despite

Defendants' representations that these items are included in the service packages.  Consumers

have been charged up to $600 in excess of the prices quoted over the telephone.

51.     Even when Defendants disclose some of the additional fees—for example

additional fees for multiple death certificates, county permits, or urns—Defendants do not

disclose all fees, and charge consumers significant fees for other items such as alternative

containers.

52.     After consumers agree over the phone to purchase cremation services from

Defendants, and after consumers have filled out extensive paperwork, Defendants email

consumers price statements titled "Statement of Funeral Goods and Services Selected/Purchase

Agreement" ("Statement").  The Statements include itemized prices for the arranged cremation

goods and services.

53.     In some instances, Defendants do not send the Statements to consumers until after

the third-party cremation providers have picked up the deceased.

54.     The prices listed on the Statements are often several hundred dollars higher than

the price Defendants told consumers over the telephone.

55.     Defendants mark up the cost for most services provided by the third-party

cremation providers, including services identified on the Statement as "cash advance items."

Defendants do not disclose on the Statement that they are charging customers more than their

cost for the cash advance items.

56.     In some instances, consumers receive more than one Statement from Defendants,

with subsequent Statements including additional or increased costs that were not identified by Defendants over the telephone or in prior Statements.

57.     In other instances, after sending the Statement, Defendants send consumers additional emails or tell consumers over the telephone that there will be additional, undisclosed fees for goods or services that Defendants previously led consumers to believe were included in the quoted cremation package prices.

### Wrongful Withholding of Remains

58.     In some instances, when consumers complain to Defendants about the price increases, Defendants threaten to withhold or actually withhold the cremated remains from the consumers unless and until they pay the new, higher prices.

59.     Some consumers pay the higher prices because they know of no other option to recover the remains.

60.     Some consumers affected by Defendants' withholding of remains identify the third-party cremation providers and arrange to pick up the remains without paying the higher prices.  However, in some of these instances, Defendants withhold the death certificates requested by the consumers.

61.     Some consumers try to cancel the arrangements with Defendants to avoid paying Defendants' price increases.  In some such cases, Defendants charge consumers hundreds of dollars to transfer remains to a different funeral home or crematory.

### Prior Proceedings or Activities That Challenged Defendants' Conduct

62.     Between 2014 and 2021, at least ten state attorneys general and state funeral licensing boards notified Defendants Damiano, Legacy, or both of their improper marketing and sales tactics, including Defendants' misrepresentations about being locally licensed funeral

homes, providing funeral services without a state license, and other misstatements of material

facts in the marketing and sale of funeral goods and services.

63.     Some states, including Florida (2019), North Carolina (2016), Pennsylvania

(2020), Tennessee (2014), Texas (2021), and Vermont (2020), have ordered Defendants

Damiano and/or Legacy to cease and desist offering funeral goods and services in their states

because Defendants do not hold a valid license to provide those goods and services.

64.     Defendants Damiano and Legacy entered into an Assurance of Voluntary

Compliance with the Georgia Attorney General in 2017, requiring them to cease and desist

holding themselves out as a Georgia funeral service provider.  Defendants Damiano and Legacy

acknowledged receipt, awareness, and understanding of the Funeral Rule.

65.     Based on the facts and violations of law alleged in this Complaint, Plaintiff has

reason to believe that Defendants are violating or are about to violate laws enforced by the

Commission.

## VIOLATIONS OF THE FTC ACT

### COUNT I

### MISREPRESENTATIONS REGARDING LOCATION AND PRICE AND UNFAIR REFUSAL TO RETURN CREMATED REMAINS

66.     Paragraphs 1-65 are incorporated as if set forth herein.

67.     In numerous instances in connection with the advertising, marketing, promotion,

offering for sale, or sale of funeral goods and services, Defendants represent, directly or

indirectly, expressly or by implication, that they have a physical location or provide funeral or

cremation services in the city or town searched for or requested by the consumer.

68.     In truth and in fact, in numerous instances in which Defendants have made the

representations set forth above, Defendants do not have a physical location or provide funeral or

cremation services in the city or town searched for or requested by the consumer.

69.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of funeral goods and services, Defendants represent directly or indirectly, expressly or by implication, that the prices they quote for cremation packages include all or substantially all the fees and costs that they will charge consumers for their goods and services.

70.     In truth and in fact, in numerous instances in which Defendants have made the price representations set forth above, Defendants charge consumers additional costs and fees and substantially higher prices for cremation packages than the prices Defendants quoted to consumers.

71.     In numerous instances, Defendants have misrepresented prices for cremation packages, adding costs and fees to substantially raise the prices.  In some such instances, Defendants have refused to return remains to consumers, threatened that they will not return the remains, or withheld information about the location of the remains until the consumers pay the increased prices Defendants demand.

72.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid and that is not outweighed by countervailing benefits to consumers or competition.

73.     Therefore, Defendants' representations as set forth above are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), (n).

## VIOLATIONS OF THE FUNERAL RULE

### COUNT II

**FAILURE TO PROVIDE ACCURATE PRICE INFORMATION, STATEMENTS OF FUNERAL GOODS AND SERVICES THAT INCLUDE THE TOTAL COST, AND FAILURE TO INCLUDE CASH ADVANCE DISCLOSURE**

74.     Paragraphs 1-65 and 67-73 are incorporated as if set forth herein.

75.     In numerous instances, in connection with selling or offering to sell funeral goods and funeral services, Defendants have failed to provide accurate price information to consumers who asked about the price of funeral goods and services, including cremation services by telephone, failed to provide consumers with statements of funeral goods and services at the conclusion of the discussion of arrangements that included the total cost of the goods and services selected by the consumer, and/or failed to provide consumers with statements of funeral goods and services that disclosed that the price being charged for cash advance items was not the same as the cost to Defendants

76.     Defendants' acts or practices as set forth above violate 16 C.F.R. §§ 453.2(b)(1), 453.2(b)(5)(i)(C), and 453.3(f)(1)(ii).

77.     Each instance in which Defendants have failed to comply with the Funeral Rule, 16 C.F.R. Part 453, constitutes a separate violation of the Funeral Rule for the purpose of assessing monetary civil penalties.

78.     Proposed defendants were aware of their obligations under the Funeral Rule during the relevant time period.

### CONSUMER INJURY

79.     Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the Funeral Rule.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust

enrichment, and harm the public interest.

## DEMAND FOR TRIAL BY JURY

Plaintiff, the United States of America, demands trial by jury.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that the Court:

A.      Enter a permanent injunction to prevent future violations of the FTC Act and the Funeral Rule by Defendants;

B.      Award monetary relief and other relief within the Court's power to grant;

C.      Award civil penalties from Defendants for the violations of the Funeral Rule alleged in this Complaint; and

D.      Award Plaintiff any additional relief as the Court determines to be just and proper.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA**

**Dated: April 22, 2022**

**BRIAN M. BOYNTON**
**Principal Deputy Assistant Attorney General,**
 **Civil Division**
**U.S. DEPARTMENT OF JUSTICE**

**GUSTAV W. EYLER**
**Director, Consumer Protection Branch**

*Cody Herche*
**Cody Matthew Herche**
**Wandaly Fernandez Garcia**
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
Phone: 202.532.4223
 **Email: cody.m.herche@usdoj.gov**

 Counsel for United States of America

**Respectfully submitted,**

**JUAN ANTONIO GONZALEZ**
**UNITED STATES ATTORNEY**

_____
**James A. Weinkle**
Florida Bar No. 0710891
Assistant United States Attorney
Email: James.Weinkle@usdoj.gov
Office of the United States Attorney
Alto Lee Adams Federal Courthouse
101 South U.S. Highway One, Suite 3100
Fort Pierce, FL 34950
Telephone: 772-293-0945 (Direct)

**Counsel for United States of America**